UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
ROKU, INC.,

                Plaintiff,                22-cv-2168 (PKC)

    -against-                      ORDER

THE INDIVIDUALS, CORPORATIONS,
LIMITED LIABILITY COMPANIES,
PARTNERSHIPS, AND UNINCORPORATED
ASSOCIATIONS IDENTIFIED ON SCHEDULE
A TO THE COMPLAINT,

                Defendants.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

        Plaintiff Roku, Inc. ("Roku") moves for entry of default judgment and entry of a permanent injunction against the defendants identified in the First Amended Schedule A.[1] (Doc 50; Doc 51, Ex. 7.) The motion will be granted as to the defendants identified in the First Amended Schedule A, except for those that have been subsequently voluntarily dismissed (the "Defaulting Defendants"). (See, e.g., Doc 74.)

        Roku commenced this action by filing a complaint on March 16, 2022, alleging that the defendants identified in Schedule A infringe Roku's trademarks and sell counterfeit products bearing Roku trademarks. (Doc 1.) Also on March 16, this Court granted Roku's request for a temporary restraining order. (Doc 16.) As to service of process, the Court directed that, pursuant to Rule 4(f)(3), Fed. R. Civ. P., Roku could effectuate service through the delivery of .pdf copies of the summons, complaint, and temporary restraining order, or a link to a secure

---

[1] The First Amended Schedule A consists of the defendants who, at the time it was filed, had not been voluntarily dismissed or engaged in settlement negotiations with Roku. (Doc 52 at 6.)

- 1 -

website where each defendant could download .pdf copies of the same (the "Link"). (Doc 16 at 8.) Roku sent copies of the summons, complaint, and temporary restraining order, as well as the Link, to defendants' email addresses on April 4, 2022. (Doc 19; Doc 51 at ¶¶ 9, 12; Doc 51, Exs. 5, 6.)

Roku is a manufacturer of digital media players and accessories for video streaming. (Doc 1 ¶ 15.) Defendants are alleged to be "individuals and business entities who . . . reside mainly in the People's Republic of China or other foreign jurisdictions" and operate storefronts on online marketplace platforms, including Amazon, AliExpress, DHgate, eBay, and others. (Doc 1 ¶¶ 21-22.)

The Court held a preliminary injunction hearing on April 19, 2022. None of the Defaulting Defendants appeared. The Court issued a preliminary injunction the same day. (Doc 25.)

The Defaulting Defendants have not answered or appeared in this case. On June 27, 2022, the Clerk of Court issued a Certificate of Default as to the Defaulting Defendants. (Doc 48.) Roku filed this motion for entry of default judgment as to the Defaulting Defendants on July 1, 2022. (Doc 50.) In support of its motion, Roku submitted a declaration from its attorney, Christopher Tom. (Doc 51.) The Defaulting Defendants have not opposed the motion for entry of default judgment.

The Court concludes that the entry of default judgment is appropriate. The Court has personal jurisdiction over the Defaulting Defendants,[2] and the complaint identifies allegedly infringing conduct by the Defaulting Defendants. When a defendant defaults, the well-pleaded

---

[2] As noted in the preliminary injunction, the Court has personal jurisdiction over the defendants because they directly target their business activities toward consumers in the United States, including New York, offering to sell and ship products into this Judicial District. (Doc 25 at 2.)

allegations of a complaint are deemed to be admitted.  See, e.g., Vera v. Banco Bilbao Vizcaya Argentaria, S.A., 946 F.3d 120, 135 (2d Cir. 2019).  The Court therefore deems the allegations of Roku's plausibly alleged complaint to have been admitted by each Defaulting Defendant.  The motion for entry of default judgment is granted as to liability.

Roku also seeks relief in the form of a permanent injunction and an award of statutory damages.  (Doc 52 at 10.)

"The party requesting permanent injunctive relief must demonstrate (1) irreparable harm . . . and (2) actual success on the merits."  Ognibene v. Parkes, 671 F.3d 174, 182 (2d Cir. 2011).  First, the allegations in the complaint are sufficient to demonstrate irreparable harm.  See, e.g., Really Good Stuff, LLC v. BAP Investors, L.C., 813 F. App'x 39, 44 (2d Cir. 2020) (consumer confusion and loss of goodwill demonstrate irreparable harm) (summary order).  As described in the complaint, the Defaulting Defendants design their online storefronts so that they appear to be authorized sellers and in such a way that makes it difficult for consumers to distinguish between the counterfeit sites and authorized websites.  (Doc 1 ¶¶ 26-27.)  Such unauthorized use of Roku's marks creates a likelihood of confusion, mistake, and deception as to the origin and quality of the goods and as to their affiliation with, or sponsorship or approval by, Roku.  (Doc 1 ¶¶ 48, 53, 60.)  Further, the Defaulting Defendants' activities threaten Roku's goodwill and control over its marks, and the nature of defendants' conduct – including their use of unauthorized search engine optimization tactics, "social media spamming," and efforts to conceal their identities, (Doc 1 ¶¶ 31-34) – is evidence of willfulness.  Second, Roku has established success on the merits due to the entry of the default judgment as to liability.  See Ideavillage Prod. Corp. v. Bling Boutique Store, 16-Civ-9039, 2018 WL 3559085, at *5

(S.D.N.Y. July 24, 2018). Therefore, the Court shall enter a permanent injunction against the Defaulting Defendants' infringing activities.

As to statutory damages, the Lanham Act provides for an award of "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(1). Where willfulness is demonstrated, a maximum award of $2,000,000 per counterfeit mark per type of good sold may be awarded. Id. § 1117(c)(2).

Roku seeks an award of $150,000 against each of the Defaulting Defendants. By virtue of the default, the Defaulting Defendants' infringement is deemed willful, and therefore the Court has discretion to award between $1,000 and $2,000,000 per counterfeit mark per type of good sold. See Tiffany (NJ) Inc. v. Luban, 282 F. Supp. 2d 123, 124 (S.D.N.Y. 2003).

Section 1117(c) "does not provide guidelines for courts to use in determining an appropriate award," except that the court should award an amount it "considers just." Tiffany (NJ) Inc., 282 F. Supp. 2d at 124-25 (citing Louis Vuitton Malletier v. Veit, 211 F. Supp. 2d 567, 583 (E.D. Pa. 2002); 15 U.S.C. § 1117(c)). For guidance, courts have looked to "caselaw of an analogous provision of the Copyright Act, 17 U.S.C. § 504(c), which also provides statutory damages for willful infringement." Id. (citing Louis Vuitton, 211 F. Supp. 2d at 583; Sara Lee Corp. v. Bags of N.Y., Inc., 36 F. Supp. 2d 161, 166 (S.D.N.Y. 1999)). Borrowing from those cases, courts consider the following factors in determining the "just" amount of statutory damages for use of a counterfeit mark: "(1) the expenses saved and the profits reaped; (2) the revenues lost by the plaintiff; (3) the value of the copyright or, by analogy, trademark; (4) the deterrent effect on others besides the defendant; (5) whether the defendant's conduct was innocent or willful; (6) whether a defendant has cooperated in providing particular records from

which to assess the value of the infringing material produced; and (7) the potential for discouraging the defendant." Smart Study Co. v. lizhiwangluo16, 2020 WL 3639659, at *6 (S.D.N.Y. July 6, 2020) (quoting Coach, Inc. v. O'Brien, 10-Civ-6071, 2012 WL 1255276 (S.D.N.Y. Apr. 13, 2012)); see also Tiffany (NJ) Inc., 282 F. Supp. 2d at 125 (citing Fitzgerald Publ'g Co., Inc. v. Baylor Publ'g Co., 807 F.2d 1110, 1117 (2d Cir. 1986)).

The Defaulting Defendants' failure to appear in this action has deprived Roku of the ability to obtain discovery from them and has made it impossible to assess Roku's loss and the extent of the Defaulting Defendants' profits gained and expenses saved. See, e.g., Kelly Toys Holdings, LLC v. alialialiLL Store, 21-Civ-8434, 2022 WL 2072567, at *13 (S.D.N.Y. June 9, 2022); Smart Study Co. v. lizhiwangluo16, 19-Civ-7725, 2020 WL 3639659, at *6 (S.D.N.Y. July 6, 2020) ("The defendants' failure to appear . . . weighs in favor of a heightened award of statutory damages under the sixth factor."); Moonbug Ent. Ltd. v. A20688, 21-Civ-4313, 2022 WL 1239586, at *3 (S.D.N.Y. Apr. 26, 2022). The Court therefore draws every reasonable inference against the Defaulting Defendants. See Philip Morris USA Inc. v. A & V Minimarket, Inc., 592 F. Supp. 2d 669, 674 (S.D.N.Y.).

As courts in this District and beyond have found, the sale of counterfeit items over the internet suggests a "broad scope of operations," Smart Study Co., 2020 WL 3639659, at *6, and "access to a virtually limitless number of customers," Tiffany (NJ) Inc., 282 F. Supp. 2d at 125 (quotations omitted) (citing Rolex Watch U.S.A., Inc. v. Jones, 99-Civ-2359, 2002 WL 596354, at *5 (S.D.N.Y. April 17, 2002); Louis Vuitton, 211 F. Supp. 2d at 584 ("While the record contains no evidence of the actual scope of the defendants' sales, nor the number of hits the internet site received, given the scope of the internet supermarket, such sale offerings are presumptively quite high . . . .")); see also Moonbug, 2022 WL 1239586, at *4; Coach, Inc. v.

Ocean Point Gifts, 09-Civ-4215, 2010 WL 2521444, at *6 (D.N.J. June 14, 2010) ("[Internet] cases often have high damage awards due in part to the wide market exposure that the Internet can provide."). The Court finds that the first, second, and sixth factors weigh in favor of a substantial damages award.

The third factor also supports a significant damages award because Roku has credibly alleged that its marks are valuable and widely recognized by consumers. (Doc 1 ¶¶ 16-20; Doc 8 ¶¶ 4-7.) The fourth, fifth, and seventh factors pertain to the willfulness the Defaulting Defendants' conduct and the deterrent effect of damages on the Defaulting Defendants and others. The Court has already determined that the Defaulting Defendants' infringement was willful. Additionally, "given the apparent extent of counterfeit activity" here, there is a need to discourage the Defaulting Defendants from future infringement and to deter others. See Kelly Toys Holdings, 2022 WL 2072567, at *13 (quoting Bumble and Bumble, LLC v. Pro's Choice Beauty Care, Inc., 17-Civ-6911, 2016 WL 658310, at *5 (S.D.N.Y. Feb. 17, 2016), report and recommendation adopted, 2016 WL 1717215 (S.D.N.Y. Apr. 27, 2016)).

Given these factors, the wide range of statutory damages permissible under the Lanham Act, and the direction of section 1117 that such damages should be awarded as "the court considers just," the Court concludes that statutory damages in the amount of $130,000 per Defaulting Defendant is just and appropriate. An award of $130,000 per Defaulting Defendant is well below the maximum award of two million dollars that could be assessed against each of them per counterfeit mark per type of good sold. It is also consistent with recent awards in similar cases involving the sale of counterfeit goods over the internet. See, e.g., Ideavillage Prod. Corp. v. Aarhus, 18-Civ-02739, 2019 WL 2290514, at *8 (S.D.N.Y. May 7, 2019) (awarding $150,000 against each defaulting defendant who sold between 250 and 300 counterfeit

products), report and recommendation adopted, 18-Civ-2739, 2019 WL 2287726 (S.D.N.Y. May 28, 2019); Off-White LLC v. adagio, 19-Civ-676, 2020 WL 1646673, at *7 (S.D.N.Y. Apr. 3, 2020) (awarding $100,000 against each of the 118 remaining defaulting defendants), report and recommendation adopted as modified, 19-Civ-676, 2020 WL 3050383 (S.D.N.Y. June 8, 2020) (deducting $500,000 from the total award because plaintiff filed a voluntary dismissal against 5 defendants after the magistrate judges' report was finalized); Off-White LLC v. ^_^Warm House^_^Store, 17-Civ-8872, 2019 WL 418501, at *2, 5 (S.D.N.Y. Jan. 17, 2019) (awarding $100,000 per defaulting defendant for a total of $5,600,000 where defendants sold between 1 and 477 infringing products each); PetMed Express, Inc. v. MedPets.Com, Inc., 336 F. Supp. 2d 1213, 1221 (S.D. Fla. 2004) (awarding $400,000 per mark infringed by defaulting defendants); see also Coach, Inc. v. Class Beach Wireless, LLC, 12-Civ-22748, 2013 WL 12095144, at *5 (S.D. Fla. Mar. 21, 2013) (awarding $150,000 per mark where defaulting defendant sold counterfeit goods in a physical store); Luxottica Grp., S.p.A. v. Casa Los Martinez Corp., 14-Civ-22859, 2015 WL 13776171, at *5 (S.D. Fla. Jan. 30, 2015) (awarding $200,000 per mark where defaulting defendants sold counterfeit goods in physical store).

        Additionally, federal statute provides for post-judgment interest "on any money judgment in a civil case recovered in a district court . . . . [to] be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." 28 U.S.C. § 1961(a).  Accordingly, Roku is entitled to post-judgment interest on its award of statutory damages.

        The Court also grants Roku's request for inclusion in the judgment of a continuation of the pre-judgment restraint on the transfer of the Defaulting Defendants' assets

and an order that such assets in the hands of affected third parties be transferred to Roku in satisfaction of the judgment, provided that the amount seized and transferred shall not exceed the amount of the judgment plus any accrued post-judgment interest.  "[C]ourts in this district routinely order transfers of infringing defendant's frozen assets to plaintiffs . . . relying on the authority to issue injunctive relief under Rule 64[, Fed. R. Civ. P.], § 1116(a) of the Lanham Act, and 'this Court's inherent equitable power to issue remedies ancillary to its authority to provide final relief.'"  Off-White LLC v. ^_^Warm House^_^ Store, 17-Civ-8872, 2019 WL 418501, at *6 (S.D.N.Y. Jan. 17, 2019) (footnotes omitted) (quoting Gucci Am., Inc. v. Curveal Fashion, 09-Civ-8458, 2010 WL 308303, at *5-6 (S.D.N.Y. Jan. 20, 2010)); see also Smart Study, 2020 WL 3639659, at *8 ("The provisions of the judgments concerning the continuance of the current asset restraint as well as post-judgment asset restraints are appropriate in these cases under Federal Rules of Civil Procedure 64 and 65, 15 U.S.C. § 1116(a), this Court's inherent equitable powers . . . ."); Spin Master Ltd. v. Alan Yuan's Store, 325 F. Supp. 3d 413, 427 (S.D.N.Y. 2018) (ordering continuing asset restraint and awarding transfer of frozen assets in full or partial satisfaction of damages).  Given the default by these defendants, there is a serious risk that enforcement of the judgment will be frustrated in the absence of such relief.

CONCLUSION

       Roku's motion for entry of default judgment is GRANTED as to the Defaulting Defendants.  The Clerk is directed to terminate the motion.  (Doc 50).

       The Court shall enter a permanent injunction against the Defaulting Defendants.  Statutory damages in the amount of $130,000 are awarded against each of the Defaulting Defendants.  Roku shall be entitled to post-judgment interest pursuant to 28 U.S.C. § 1961(a).

Within fourteen days, Roku shall submit a revised proposed default judgment reflecting the monetary and injunctive relief set forth above, as well as an accurate list of Defaulting Defendants as of the date of this Order. The proposed default judgment shall include all Defaulting Defendants' names in the caption.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
January 9, 2023